UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Edward Johnson,

    Plaintiff,

    v.                                        Civil Action No. 2:14-cv-222

Carl Davis, Marcel Cote,
Mike Eversole,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 22)

Edward Johnson, a Vermont inmate proceeding *pro se*, brings this action against Vermont Department of Corrections (DOC) personnel Defendants Carl Davis, Marcel Cote, and Mike Eversole, claiming that he was "set up" and that Defendants wrongfully disciplined him for tampering with the lock on the laundry room door during his recreation period. (Doc. 15 at 3.)[1] Johnson asserts that his due process rights have been violated because he was not able to review security camera footage that he says would prove his innocence. (Doc. 15 at 2.) For relief, Johnson asks the court to review the footage and dismiss the disciplinary violation from his record. (*Id.* at 4.)

Defendants, who are represented by the Vermont Attorney General's Office, move to dismiss, arguing that Johnson's claims—including any claim that he might be asserting

---

[1] Johnson sought to bring suit in the Southern District of New York in October 2014. That court transferred the action to the District of Vermont in an Order dated October 20, 2014. (*See* Doc. 3.)

under 42 U.S.C. § 1983—are barred under the doctrine of res judicata. (Doc. 22 at 1, 5.) Johnson opposes dismissal, maintaining that his due process rights were violated and that the camera footage proves his innocence. (*See* Doc. 26 at 2.) For the reasons discussed below, I recommend that Defendants' Motion to Dismiss (Doc. 22) be GRANTED and that the case be DISMISSED.

## Background

The essential allegations of Johnson's short Complaint are stated above. The Defendants were at all relevant times DOC employees. Carl Davis was the Superintendent of the Northern State Correctional Facility (NSCF) in Newport, Vermont. Defendants Cote and Eversole were both correctional officers at NSCF. (*See* Doc. 15 at 1–2.) Defendants executed waivers of service in both their official and individual capacities. (Docs. 16–21.)

Additional relevant background consists primarily of the Vermont Supreme Court's Entry Order in *Johnson v. Pallito*, No. 2014-018, 2014 WL 3714975 (Vt. July 24, 2014) (unpublished mem.).[2] Johnson appealed a Vermont Superior Court order granting summary judgment to the State of Vermont in two consolidated cases in which Johnson sought judicial review of prison disciplinary violations assessed against him. *Johnson*, 2014 WL 3714975, at *1. The Supreme Court recited the following factual and procedural background:

---

[2] Defendants have filed a copy of the Entry Order in support of their Motion. (*See* Doc. 22-2.) The court may take judicial notice of the *Johnson v. Pallito* decision. *See Briggs v. Warfield*, No. 2:06-CV-227, 2007 WL 4268918, at *3 (D. Vt. Nov. 30, 2007) ("When a party moves to dismiss on the basis of *res judicata*, the Court may consider both the face of the complaint and matters of which the Court may take judicial notice, including prior court decisions.").

> Following a disciplinary hearing attended by plaintiff, the Department of Corrections (DOC) hearing officer found plaintiff guilty of tampering with a laundry room door lock and possessing an item that posed a danger to the facility. The hearing officer cited disciplinary reports from corrections officers stating that: (1) plaintiff was outside his cell on recreation at the time of the tampering incident; (2) an officer observed plaintiff tampering with a laundry room door lock and called for a cell search; (3) an officer reviewed security camera footage, which showed plaintiff at the laundry door; and (4) a search of plaintiff's cell revealed a sharpened tooth brush attached to the underside of plaintiff's toilet. Plaintiff filed complaints under Vermont Rule of Civil Procedure 75, seeking judicial review of the disciplinary violations. The State filed a motion for summary judgment as to both complaints, to which plaintiff did not respond. The court dismissed the complaints, stating that the facts alleged by the State were not disputed by plaintiff and that the recording of the tampering and the discovery of a shank in plaintiff's cell constituted sufficient evidence to support the disciplinary violations assessed against plaintiff.

*Id.*

On appeal, Johnson asserted that he was "set up" and asked the Supreme Court to review the camera footage. *Id.* The Supreme Court affirmed, reasoning that the Superior Court properly considered the State's unopposed assertion of facts on summary judgment, and that those facts "easily satisfied" the "some evidence" standard of review for cases involving challenges to disciplinary violations. *Id.* The Defendants in *Johnson v. Pallito* were DOC Commissioner Andrew Pallito and NSCF Superintendent Carl Davis. *Id.* Johnson does not dispute that the lock-tampering incident addressed in *Johnson v. Pallito* is the same incident that gives rise to the present case. (*See* Doc. 26 at 1–2.)[3]

---

[3] In his Complaint, Johnson alleges that the events giving rise to his claims occurred on December 13, 2014. (Doc. 15 at 3.) Presumably Johnson intended to state that the events occurred before then, since the Complaint itself is dated October 2, 2014. (*Id.* at 4.)

## **Analysis**

**I.     Motion-to-Dismiss Standard and Applicable Law**

Since it is premised on the doctrine of res judicata (also known as claim preclusion), Defendants' Motion to Dismiss is properly considered under Fed. R. Civ. P. 12(b)(6).  *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.").  On a Rule 12(b)(6) motion, the court accepts as true the factual allegations in the complaint and draws all inferences in the plaintiff's favor.  *See Barrows v. Burwell*, 777 F.3d 106, 111 (2d Cir. 2015).  "To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at 111–12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Because Johnson represents himself, he is entitled to a liberal construction of his pleadings.  *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014) (per curiam).

Under the Full Faith and Credit Act, "judicial proceedings of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738.  "To qualify for full faith and credit under the Act, the 'state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause.'"  *Conopco*, 231 F.3d at 87 (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982)).  "To determine the effect of a state court

4

judgment, federal courts . . . are required to apply the preclusion law of the rendering state." *Id.*

Under Vermont's claim-preclusion doctrine, "'a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical.'" *Citimortgage, Inc. v. Dusablon*, 2015 VT 68, ¶ 13 (quoting *Faulkner v. Caledonia Cnty. Fair Ass'n*, 2004 VT 123, ¶ 8, 869 A.2d 103). "The doctrine 'bars parties from relitigating, not only those claims and issues that were previously litigated, but also those that could have been litigated in a prior action.'" *Natural Res. Bd. Land Use Panel v. Dorr*, 2015 VT 1, ¶ 10 (quoting *Carlson v. Clark*, 2009 VT 17, ¶ 13, 970 A.2d 1269). In short, "[c]laim preclusion is found where (1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." *Breslin v. Synnott*, 2012 VT 57, ¶ 8, 54 A.3d 525 (internal quotation marks omitted).

## II.   Preclusive Effect of *Johnson v. Pallito*

Res judicata bars Johnson from litigating his claims in this case. The judgment of the Vermont Superior Court that was affirmed in *Johnson v. Pallito* involves the same subject matter as that raised in the present case. Specifically, both that case and this one involve challenges to the discipline imposed upon Johnson for the laundry room lock-tampering incident.

The parties in both cases are also substantially identical because they are the same parties or parties in privity. Johnson was the plaintiff in *Johnson v. Pallito* and is the

Plaintiff in this case. Davis was a defendant in *Johnson v. Pallito* and is a Defendant in this case. It is true that each case involves defendants that were not named in the other case—Pallito is not a defendant in this case, and Cote and Eversole were not defendants in *Johnson v. Pallito*. However, all of those defendants are in privity for claim-preclusion purposes. As the Vermont Supreme Court has explained, "'[a] privity relationship generally involves a party so identified in interest with the other party that they represent one single legal right.'" *Bain v. Hofmann*, 2010 VT 18, ¶ 10, 993 A.2d 432 (mem.) (alteration in original) (quoting *Lamb v. Geovjian*, 165 Vt. 375, 380, 683 A.2d 731, 735 (1996)). Here, all of the defendants—in this case and in *Johnson v. Pallito*—share the same legal interest in determining whether Johnson's discipline for the lock-tampering incident was proper.

That conclusion holds true regardless of the capacities in which the defendants are sued here or were sued in *Johnson v. Pallito*. In their official capacities, for claim-preclusion purposes, each defendant is in privity with the State of Vermont and with each other defendant. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the [governmental entity] is res judicata in relitigation of the same issue between that party and another officer of the government."); *Deyo v. Pallito*, No. 2012-397, 2013 WL 2922406, at *2 (Vt. May 2013) (unpublished mem.) ("'In the claim preclusion context, governmental officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the governmental body.'" (quoting *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988)). To

6

the extent Defendants are sued in their individual capacities, res judicata also applies, since Defendants are being sued for actions taken in their official roles. *See Lamb*, 165 Vt. at 380 ("[W]hen a party is sued as an individual for actions taken solely in her official role, res judicata may not be circumvented."); *see also Deyo*, 2013 WL 2922406, at *2 (plaintiff could not avoid preclusive effect of res judicata by suing DOC officials in their individual capacities as well as their official capacities).

The final inquiry is whether Johnson's claims have been or could have been litigated in *Johnson v. Pallito*. To the extent that Johnson seeks judicial review of the disciplinary violation assessed against him for tampering with the lock on the laundry room door, that was precisely the claim that was litigated previously in Vermont state court. To the extent that Johnson alleges that his due process rights were violated at the administrative disciplinary hearing because he did not have access to the security camera footage, such a constitutional claim could have been raised in the state-court proceedings. *See Coolidge v. Coates*, No. 1:06-CV-92, 2006 WL 3761599, at *3 (D. Vt. Nov. 20, 2006) (noting that res judicata "applies equally to constitutional claims arising under § 1983 which could have been argued in an earlier state court proceeding" (citing *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 84–85 (1984))).[4]

Reading Johnson's Complaint liberally, he may also be alleging that the Vermont state-court Rule 75 proceedings themselves did not satisfy the requirements of the Due

---

[4] *King v. Gorczyk* is an example of a Vermont inmate who did in fact bring a due process challenge to the DOC procedures used in convicting him of a disciplinary violation. King argued that the DOC's failure to provide him at his disciplinary hearing with laboratory reports from his random drug test deprived him of a due process right to present favorable evidence. 2003 VT 34, ¶ 8, 825 A.2d 16. The actual laboratory reports were produced in the Rule 75 litigation, and the Supreme Court, upon review of those reports, concluded that King was not prejudiced by DOC's failure to supply the reports because nothing in the reports seriously called into question the identity of the urine tested. *Id.* at ¶ 9.

Process Clause because the Vermont courts did not review the camera footage. As noted above, if a state-court proceeding does not satisfy the minimum procedural requirements of the Due Process Clause, then it does not qualify for full faith and credit under the Full Faith and Credit Act. I conclude, however, that Johnson has not shown that the state-court Rule 75 proceedings afforded less than due process requires.

Neither the summary-judgment procedure nor the "some evidence" standard required the Vermont courts to review the footage. Under V.R.C.P. 56(e)(2), because Johnson did not respond to defendants' summary-judgment motion, the Vermont courts were entitled to consider the facts alleged by the defendants to be undisputed, including correctional officers' statements that Johnson was observed tampering with the lock and that the camera footage showed Johnson at the laundry door. Moreover, the "some evidence" standard did not require the Vermont courts to examine "'the entire record, [make an] independent assessment of the credibility of witnesses, or weigh[] . . . the evidence.'" *LaFaso v. Patrissi*, 161 Vt. 46, 50, 633 A.2d 695 (1993) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)). And neither the summary-judgment procedure nor the "some evidence" standard violates due process. *See Hill*, 472 U.S. at 455 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."); *Altenheim German Home v. Turnock*, 902 F.2d 582, 585 (7th Cir. 1990) ("The summary judgment procedure that Rule 56 of the Federal Rules of Civil Procedure creates is not a denial of due process . . . .").

**III.     Leave to Amend**

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nonetheless, leave to amend may be denied in certain circumstances, including futility. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Here, better pleading will not cure the res judicata bar. Accordingly, I recommend that leave to amend be denied.

## Conclusion

For the reasons discussed above, I recommend that Defendants' Motion to Dismiss (Doc. 22) be GRANTED and that the case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 7th day of May, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).